**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GERARD MOTSAY,** | : | **No. 3:06cv1387** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **PENNSYLVANIA AMERICAN** | : | |
| **WATER CO./RWE GROUP,** | : | |
| **Defendant** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

_____Before the court for disposition is the motion for summary judgment filed by Defendant Pennsylvania American Water Co./RWE Group in this disability discrimination in employment case.   The matter has been fully briefed, and oral argument has been held.  For the following reasons, the motion will be denied.

**Background**

Defendant Pennsylvania American Water employed plaintiff for over twenty years.  He performed job functions within the departments of marketing, meter reading, road construction, gas/water leak detection, water filtration and maintenance.  At the time relevant to this lawsuit, he served as a Maintenance Technician.

In July 2003, plaintiff suffered severe congestive heart failure that required him to take leave from work.   In April 2004, plaintiff contacted his supervisor about returning to work in a light duty capacity. After filling out the appropriate form, plaintiff's supervisor informed him that there were safety equipment issues regarding whether plaintiff could wear all the safety equipment and that there were no longer any light duty positions within the company.

In July 2004, one year after plaintiff went on leave, defendant notified plaintiff that his employment was terminated according to a company policy

that required him to return to work within a year.

Subsequently, plaintiff instituted the instant law suit alleging disability discrimination under the Pennsylvania Human Relations Act ("PHRA") and the Americans with Disabilities Act, 42 U.S.C § 12101 *et seq*. ("ADA").  At the close of discovery, defendant filed the instant motion for summary judgment bringing the case to its present posture.

**Jurisdiction**

As this case is brought pursuant to the ADA, we  have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.")  .  We  have supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Standard of review**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

 In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion.  International Raw Materials, Ltd. v. Stauffer Chemical Co., 898

F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986).  A fact is material when it might affect the outcome of the suit under the governing law. Id.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

Defendant moves for summary judgment on three grounds: 1) plaintiff has failed to make a *prima facie* showing of discrimination; 2) plaintiff has not presented any evidence that his employment was not terminated for legitimate non-discriminatory reasons; and 3) plaintiff failed to timely file the required administrative claim.  We will address these issues *in seriatim*.

**I.  Prima facie case**

In order to sustain a cause of action under the ADA, a plaintiff must first establish a *prima facie* case.  To establish a *prima facie* case under the ADA the plaintiff must demonstrate that he is (1) disabled within the meaning of the ADA, (2) can perform essential functions of his job with or without reasonable accommodations, and (3) suffered an adverse

employment action as a result of discrimination based on his disability. Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir.2000).

### a. Is the plaintiff "disabled" within the meaning of the ADA?

The first issue addressed by the parties is whether the plaintiff has established that he was "disabled" within the meaning of the ADA. Disability is defined under the ADA as: "a physical or mental impairment that substantially limits one or more of the major life activities of the individual." 42 U.S.C. § 12102(2).   In order to establish a "disability", therefore, a plaintiff must demonstrate that he has an impairment; identify the life activity that is limited by the impairment; and establish that the limitation is substantial.  Fiscus v. Wal-Mart Stores, Inc., 385 F.3d 378, 382 (3d Cir. 2004).

In the instant case, there is really no dispute that plaintiff suffered an impairment, namely, congestive heart failure, coronary artery disease, ischemic cardiomyopathy and ischemic mitral regurgitation.   (Compl. ¶ 16). Defendant contends that these impairments do not limit a major life activity. Plaintiff disagrees and asserts that his heart disorders substantially limit the major life activity of blood circulation and pumping.  After a careful review, we agree with the plaintiff.

In Fiscus, supra, the Third Circuit Court of Appeals found that cleansing blood and processing and eliminating waste from the blood is a "major life activity" under the ADA.  Fiscus, 385 F.3d at 384.  In reaching this conclusion, the court noted that "[e]ven internalized and autonomous body activities may qualify as major life activities within the meaning of the ADA."   Because death results when the blood is not properly processed, processing and eliminating waste from the blood qualifies as a major life

4

activity.  Id.  Likewise, in the instant case, without the internalized and autonomous process of blood circulating and pumping, death results. Thus, such circulation and pumping is a major life activity.  See Snyder v. Norfolk Southern Railway Corp., 463 F. Supp. 2d 528, 537 (E.D. Pa. 2006) (holding that "pumping and circulating of blood is a major life activity.").

Next, we must determine if plaintiff's major life activity of pumping and circulating blood is substantially limited.  After a careful review, we find that they are.  Plaintiff suffers from some physical manifestations of his disorder and the treatment that he has received for it.  For example, he cannot pinch or perform tight fist-grasping functions due to numbness in three fingers on his left hand.  (Doc. 18-2, Pl. Depo. at 73-73).   Moreover, he can only drive for an hour or so before he must stop and exercise because his arm will hurt.  (Id. at 119-120).  He also gets short of breath when walking for more than fifteen minutes.  (Id. at 121).  He also has cramping in his arms and legs that interrupts his sleeping.  (Id.).  We find that all of these limitations/disorders illustrate that the limitation on plaintiff's circulating and pumping blood is a substantial limitation under the ADA.[1]

> **b.  Can plaintiff perform the essential functions of the job with or without reasonable accommodation?**

The next step in the plaintiff's *prima facie* case is whether he can

_____

[1]Defendant argues that the only limitations that the plaintiff has is that he is unable to play golf and he must take break while driving.  For the reasons set forth in the body of the opinion we disagree.  The limitation of a major life activity that the plaintiff has is in circulating and pumping blood. The functions that he cannot perform due to this limitation are relevant with regard to whether the limitation is substantial.

perform essential functions of his job with or without reasonable accommodations.  <u>Shaner v. Synthes</u>, 204 F.3d 494, 500 (3d Cir.2000). Defendant argues that plaintiff could not perform the essential functions of his job of Maintenance Technician because he was unable to wear a respirator, use power tools, and grasp essential tools with his hands.  (Doc. 27, Def. Brief at 12-13).  Plaintiff has presented evidence that he can perform the essential functions of the job with the accommodation of being placed on "light duty."   He has presented evidence that he had been allowed to return to work in the past on light duty status without being able to wear all the equipment, utilize power or air tools and could not pinch or perform tight fist activities and could not raise his arms.  (Doc. 18-4, Dep. Mark P. Cross at 47-48, 54-55).

Accordingly, a question of fact exists as to whether plaintiff could perform the essential functions of his job with a reasonable accommodation.  Summary judgment is thus inappropriate for the defendant.

Defendant also argues that it had no duty to reasonably accommodate the plaintiff because it did not know of the disability and the employee's desire for an accommodation.

Under the ADA's regulations: "To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the [employee] in need of accommodation. This process should identify the precise limitations resulting from the disability and the potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2( o)(3).  Thus, once an employee who is disabled under the ADA requests a reasonable

6

accommodation, the employer must make a reasonable effort to determine the appropriate accommodation. <u>Jones v. United Parcel Serv.</u>, 214 F.3d 402, 407 (3d Cir. 2000).   Both plaintiff and defendant have a duty to assist in searching for an appropriate reasonable accommodation and to act in good faith <u>Taylor v. Phoenixville School Dist.</u>, 184 F.3d 296, 312 (3d 1999).

Defendant asserts that the plaintiff never initiated the interactive process required under the ADA.  After a careful review, we disagree. Employers do not have a duty to assume employees are disabled and require accommodations.  <u>Id.</u> at 313.  However, notice of a disability need not be in writing, and the employee does not have to formally invoke the "magic words" "reasonable accommodation."  <u>Id.</u>   All that is required is that the employer knows "of both the disability and the employee's desire for accommodations for that disability."  <u>Id.</u>

In the instant case, it is without question that the defendant knew of plaintiff's health problems and his limitations. The only question is whether he made a request for accommodation.  Plaintiff has provided evidence that he did.  For example, when he learned that he was not to be allowed back to his pre-injury job due to his restrictions he asked, "Is there anything I can do to get back to work?" (Doc. 18-2, Pl. Dep. 98-99).   Even more telling, plaintiff filled out the paperwork for the accommodation of light duty work.  (<u>Id.</u> at 98).   The defendant's claim that the plaintiff did not initiate the interactive process required by the ADA is without merit.[2]

---

[2]Defendant also argues that plaintiff's desired accommodation was patently unreasonable.   Due to the many factual disputes in this case, questions of reasonableness will be for the jury to decide, not for the court to determine at this point as a matter of law.

7

### c. Adverse employment action

The final element of plaintiff's *prima facie* case is whether he suffered an adverse employment action as a result of discrimination based on his disability. Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir.2000).  In the instant case, it is without question that the plaintiff suffered an adverse employment action - - his employment was terminated.   As explained more fully below, plaintiff has presented evidence that the termination was a result of discrimination based on his disability.

For all the above reasons, defendant's argument that judgment in its favor is appropriate for plaintiff's failure to establish a *prima facie* case will be denied.[3]

## II. Legitimate Non-Discriminatory Reasons

Once a plaintiff has established a *prima facie* case of discrimination, the burden of production shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment decision. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).   If the

---

[3]Plaintiff has also presented evidence that even if he did not suffer from a disability as defined under the ADA, his employer treated him as if he did.  A plaintiff may be "disabled" pursuant to the ADA if the employer regards him as substantially limited in a life activity. 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g).  Plaintiff could establish that while employees were allowed to return to work in a light duty capacity in the past, the employer did not allow that in the instant case because it feared plaintiff would suffer a heart attack on the job.  See 29 C.F.R. pt. 1630, app. § 1630.2( l) (providing as an example of a "regarded as" disabled employee, where an individual with controlled high blood pressure that is not substantially limiting, is assigned to less strenuous work because of because of the employer's unsubstantiated fear that the employee will suffer a heart attack).

defendant does produce this evidence, the burden shifts back to the plaintiff to produce evidence that the defendant's reasons are merely a pretext for discrimination.  <u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994).  To meet this burden, plaintiff must present some evidence from which the "factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." <u>Id.</u> at 764.

In the instant case, the defendant argues that the plaintiff was terminated because his mandated leave of absence had expired, and he was unable to perform an essential job function of a Maintenance Technician in that he could not wear the protective equipment with or without accommodation.  (Doc. 27, Def. Brief at 16).

Plaintiff has presented evidence that this reason was merely pretext. For example, as explained above, he has presented evidence that he could perform the job with accommodation.  Moreover, he testified that he told his employer that he was able to wear the protective equipment and if his doctor's statement on the issue was not clear, he would get a clarification of that matter.  (Doc. 18-2, Pl. Dep. at 97-98).  The defendant was not interested in such clarification. (<u>Id.</u> at 98).

Accordingly, we find that plaintiff has provided sufficient evidence, that if credited by the jury could establish disability discrimination in the instant case.  Defendant's motion for summary judgment will thus be denied.

## III.  Timeliness

The last issue raised by the defendant is whether plaintiff met the

time limits placed on disability discrimination cases.  In the instant case, plaintiff had to file with the Equal Employment Opportunity Commission within three hundred (300) days of the alleged unlawful employment practice.   29 U.S.C. § 626(d)(2); <u>Serendinski v. Clifton Precision Products Co.</u>, 776 F.2d 56, 61 (3d Cir. 1985).

In the instant case, defendant argues that the formal charge of discrimination was not filed until four hundred forty-nine (449) days after plaintiff's termination, therefore the claim is barred.

We disagree.  Plaintiff filed a letter with the EEOC on August 12, 2004, four weeks after his termination.  The letter, which included all the documents relevant to plaintiff's charge of discrimination, is sufficient for tolling the statute of limitations according to the plaintiff.

The August 12th letter provides as follows:

> I have enclosed the following paperwork on behalf of Mr. Gerard Motsay and would ask that you kindly file a charge and investigate this matter. . . We would like a formal Complaint drafted.
> - ADA Intake Questionnaire and Continuation Page
> - Allegations of Employment Discrimination
> - Charge Information Questionnaire
> - Witness Questionnaire
> - Remedy Information
> - Medical Authorization and Release
> - Dual File Form with the PHRC."

(Doc. 30-5).

We find that this letter is sufficient to meet plaintiff's obligation under 29 U.S.C. § 626(d)(2).  It was filed a mere four weeks after the adverse employment action; therefore, we will deny summary judgment to the defendant on this ground.

**Conclusion**

For the reasons set forth above, the defendant's motion for summary

10

judgment will be denied in all respects.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GERARD MOTSAY,** | : | **No. 3:06cv1387** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **PENNSYLVANIA AMERICAN** | : | |
| **WATER CO./RWE GROUP,** | : | |
| **Defendant** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>ORDER</u>

_____**AND NOW**, to wit, this 11th day of February 2008, the defendant's motion for summary judgment (Doc. 17) is hereby **DENIED**.


                                        **BY THE COURT:**

                                        **s/ James M. Munley**
                                        **JUDGE JAMES M. MUNLEY**
                                        **United States District Court**

12